**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

CAROLYN MILLER,                                  CIVIL DIVISION

      Plaintiff,
                                                 No.
  v.

FAMILY RESOURCES,                                **JURY TRIAL DEMANDED**

      Defendant.

## COMPLAINT

Plaintiff, Carolyn Miller, avers the following in support of the herein Complaint:

### I.  The Parties

1.      Plaintiff, Carolyn Miller, is an African American woman over the age of 40, who resides in Allegheny County, Pennsylvania.

2.      Defendant, Family Resources, is a Pennsylvania, non-profit corporation with a principal place of business at 425 Forbes Ave, Pittsburgh, PA 15219.

### II. Jurisdiction and Venue

3.      The jurisdiction of this Court is invoked pursuant to 42 U.S.C § 1981, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(f)(3); 29 U.S.C. § 621, and 28 U.S.C. §§ 1331 and 1343(a)(4).

4.      Plaintiff has satisfied all procedural and administrative requirements because:

    a.      On July 19, 2018, she timely filed a Charge of Discrimination with the EEOC and cross filed with the Pennsylvania Human Relations Commission, alleging race, sex, and age discrimination;

    b.      On April 4, 2019, the EEOC issues a Notice of Right to Sue; and

    c.      This Complaint is filed within 90 days of receipt of that Notice.

5.      A substantial portion of the events or omissions giving rise to Plaintiff's claims occurred in the Western District of Pennsylvania; therefore, venue is proper pursuant to 28 U.S.C. § 1391(b).

### III.  Factual Background

6.      From September 18, 2017, through May 2, 2018, Miller was employed as a full-time therapist for Defendant.

7.      Miller was a qualified therapist, and she competently performed her duties.

8.      Nevertheless, throughout her employment, Miller was treated differently than her colleagues who were white, younger, and/or male, as illustrated by the following examples, which are not intended as an exhaustive list:

      a.      When hired, Miller was the only therapist who was not given an office; she was forced to "float" for several weeks;

      b.      Once Miller was finally given her own office, in October 2017, her supervisor, Scott Cunningham, removed her from the office to give it to a white, male, part-time employee;

      c.      Defendant set productivity goals for Miller but, then, gave her a lower number of assignments as compared to her co-workers, which undermined her ability to meet her productivity goals.

9.      Beginning in October 2017, Miller's direct supervisor, Scott Cunningham, began targeting Miller. Cunningham is a white, male individual.

10.     On at least four separate occasions, Cunningham addressed Miller as a "big baboon." For example, Cunningham made statements to Miller, such as, "Not too soon, ya big baboon."

11.     Cunningham routinely treated Miller differently than her younger, white, and/or male counterparts by using aggressive language and physical intimidation against her specifically.

For example, he would intentionally intimidate Miller by standing over her as she sat at her desk, adopting an aggressive stance and pointing his finger at her.

12.     Cunningham also prevented and/or limited Miller from attending professional training seminars, without similarly restricting her co-workers.

13.     On multiple occasions, Miller met with the Director of Treatment Services, Quincy Stephenson, to discuss Cunningham's inappropriate and hostile behavior and to report feeling uncomfortable in her work environment. These meetings occurred in or around November 2017, January 2018, and February 2018. Stephenson dismissed Miller's concerns and took no corrective action against Cunningham.

14.     Thus, on March 27, 2018, Miller met with the Executive Director of Family Resources, Aimee LeFevers, to report Cunningham's actions.

15.     The next day, on March 28, 2018, Miller received a letter from Shelli Lewis, the Senior Director of Human Resources for Family Resources, placing Miller on a paid leave of absence:

> In response to your reports of harassment, racial and sexist events within the Counseling Center of this agency, you are being provided a paid leave of absence beginning today, March 28, 2018, returning on Wednesday, April 4, 2018. During this time, an internal fact-finding event will ensue, slated for completion prior to your return. While on leave, please refrain from contacting any member of the Counseling Center, to maintain fidelity of the investigation.

16.     Miller believes and, therefore, avers that, during her forced leave, Defendant did not actually or adequately investigate Miller's claims or Cunningham's conduct.

17.     Rather, Defendant used Miller's leave to investigate Miller and attempt to find reasons to fire her. For example, during Defendant's purported investigation, Defendant interviewed Millers co-workers and asked questions like: (a) do you get along with Miller; (b) do

Miller's clients seem happy; and (c) are you aware of any of Miller's clients complaining about her? They were not asked questions about Cunningham, including whether they had observed Cunningham engage in racist, sexist, or otherwise hostile behavior.

18.     During Miller's one-week leave of absence, Defendant also contacted Miller's clients and attempted to convince them to permanently transfer to other therapists working for Defendant, which would have further undermined Miller's ability to meet her productivity goals. Miller's clients declined to transfer to another therapist.

19.     On April 4, 2018, when Miller returned from mandatory leave, Lewis and Stephenson advised her that that the investigation revealed Miller's report was "unfounded" and Defendant had "no choice" but to place her back in the same environment. Lewis further declared that Miller's report of discrimination and harassment "bordered on insubordination."

20.     Thereafter, Defendant began a retaliatory course of conduct intended (1) to make Miller's work environment so unbearable that she was forced to quit, and/or (2) to create pretextual excuses to discharge Miller.

21.     During Miller's first weekly supervision after her leave, she was advised that she was no longer allowed to discharge any clients without reviewing the client's history with and receiving permission from Stephenson. This was not standard protocol. Miller's co-workers were not subjected to this heightened level of supervision and scrutiny.

22.     Then, on April 20, 2018, during another weekly supervision, Stephenson advised Miller that he had received a complaint from a co-worker, but he intentionally declined to provide enough details for Miller to substantively respond. When Miller expressed confusion, Stephenson began mocking and baiting Miller, as if trying to elicit an emotional or insubordinate response

from Miller. During this review, Stephenson left his door open, so that Miller's co-workers could hear him loudly reprimanding and mocking Miller.

23.     Approximately five minutes after this review, Miller witnessed Stephenson and Cunningham in an open area whispering and laughing while looking at a copy of the written April 20th review for Miller.

24.     After the supervision, Miller was able to determine the complaint was meritless and had been made by a white co-worker, Stephanie Davis. Davis was a less qualified, part-time therapist, who was seeking a full-time position with Defendant.

25.     A week later, on April 27, 2018, Miller was informed that she would not be allowed to attend the training seminar that her co-workers would be attending.

26.     The following week, on May 1, 2018, Lewis and Stephenson met with Miller to accuse her of "fraud" regarding a computer entry error for a canceled client appointment.

27.     Miller had canceled an appointment for a client and mistakenly entered the cancellation into Defendant's computerized records system as a "no show," instead of marking the cancellation as "a reschedule." Miller admitted the mistake and advised it was unintentional.

28.     Lewis and Stephenson continued to treat the clerical mistake as "fraud," advising that the incident would result in a written warning in Miller's file and insinuating that her therapist license was at risk.

29.     Defendant used this minor incident as a pretextual reason to harass Miller, as part of its plan to either terminate Miller and force her to quit, in retaliation for her complaining about her harassment and because of her race.

30.     Following this meeting on May 1, 2018, Miller went to Aimee LeFevers, the Executive Director, advising that Lewis and Stephenson had accused her of fraud, without merit, and had threatened her license. LeFevers dismissed Miller and offered no assistance.

31.     Recognizing that her work environment had only worsened since her formal report of sexism, racism, and harassment and feeling she had no alternative to escape the increasingly hostile environment, Miller submitted a letter of resignation on the same date of May 1, 2018 explaining:

> Please know that it is with regret that I resign my position as Therapist with your agency.
>
> I am asking to be allowed for this resignation to take effect on July 1, 2018 so that I can stabilize my client caseload and not abandon my clients.
>
> My resignation is for my self care and due to working in a hostile environment, that has worsen[ed] since my return from a mandated "respite" and agency investigation of my allegations of sexism, racism and harassments in the workplace.

32.     Despite the hostile work environment, Miller was willing to stay until July 1, 2018, because she was willing to place the care and mental health of her clients above her own wellbeing.

33.     The next day, on May 2, 2018, Miller returned to work and completed a full day of appointments. At the end of the day, Lewis demanded that Miller "immediately leave the premises." When Miller asked for an explanation, Lewis provided no written or verbal explanation and, instead, threatened to call the police if Miller failed to immediately leave. Lewis and Stephenson watched Miller pack up her personal belongings and escorted her out of the office.

34.     On May 7, 2018, Miller emailed Defendant requesting clarity on her employment status.

35.     On May 10, 2018, Lewis sent a letter to Miller stating: "This letter is intended to acknowledge your voluntary resignation, submitted on May 1, 2018, effective May 2, 2018."

36.     Miller responded to the May 10 letter, clarifying that her resignation was not voluntary:

> I did not "voluntarily" resign my position with Family Resources. Resignation was submitted under extreme duress and ongoing harassment, discrimination, racism and sexism in my work environment.

37.     After Defendant constructively discharged Miller, it gave Miller's full-time position to Stephanie Davis, a less-qualified white woman.

38.     Defendant has a history of mistreating and terminating employees based on race.

**COUNT I**
**Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 2000(e) et seq.**
**Race Discrimination and Retaliation**

39.     Plaintiff incorporates by reference Paragraph 1 through 38 above.

40.     Miller is African American.

41.     As illustrated above, Defendant discriminated against Miller because of her race and subjected her to racial slurs.

42.     The above-described race discrimination created an intimidating, oppressive, hostile, and offensive work environment that interfered with Plaintiff's emotional and physical well-being.

43.     Defendant failed to adequately supervise, control, discipline, and/or otherwise penalize the conduct, acts, and failures of Cunningham, as described above

44.     When Miller reported being mistreated based on her race, Defendant retaliated against her and, ultimately, constructively discharged Miller.

45.     Defendant illegally retaliated against Plaintiff by subjecting her to unjust scrutiny, false allegations of misconduct, disparate treatment as compared to co-workers, humiliation and abuse, and derisive comments based solely on her report of race discrimination. Defendant had no legitimate reason for such acts. Each such act of retaliation violated Title VII.

46.     As a direct result of Defendant's violation of Title VII, Miller has lost wages and other economic benefits of her employment with Defendant. Further, Miller has suffered emotional distress, depression, inconvenience, and humiliation.

WHEREFORE, Plaintiff requests the following:

a.     That the Court enter a judgment declaring Defendant's actions to be unlawful and in violation of Title VII of the Civil Rights Act;

b.     That Defendant be ordered to provide Plaintiff her accumulated seniority, fringe benefits, and all other rights;

c.     That Defendant be required to compensate Plaintiff for the full value of wages she would have received had it not been for Defendant's illegal treatment of Plaintiff, with interest from the date of discrimination, in addition to reimbursement for lost pension, social security, experience, training opportunities, and other benefits;

d.     That the Court award Plaintiff compensatory and punitive damages as a result of Defendant's violations of Title VII of the Civil Rights Act;

e.     That Plaintiff be awarded against Defendant the costs and expenses of this litigation and reasonable attorneys' fees; and

f.     That the Court grant Plaintiff additional relief as may be just and proper.

## COUNT II
## 42 U.S.C. § 1981

47.     Plaintiff incorporates by reference Paragraph 1 through 46 above.

48.     Defendant constructively discharged Miller before of her race and in retaliation for her reporting racial discrimination. It therefore deprived Miller of the same right to make and

enforce contracts as enjoyed by white citizens, in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981.

49.     Defendant's acts against Miller were undertaken with intentional or reckless indifference to Miller's federally protected right to make and enforce contracts irrespective of her race.

50.     As a direct and proximate result of Defendant's discrimination, Miller suffered the following injuries:

      a.    Great mental anguish and emotional strain;

      b.    Loss of income and benefits; and

      c.    Humiliation and inconvenience.

WHEREFORE, Plaintiff requests the following:

      a.    That Defendant be required to compensate Plaintiff for the full value of wages and benefits she would have received had it not been for Defendant's illegal treatment of Plaintiff, with interest from the date of discrimination;

      b.    That the Court award Plaintiff compensatory and punitive damages;

      c.    That Plaintiff be awarded the costs and expenses of this litigation and reasonable attorney's fee; and

      d.    That the Court grant Plaintiff additional relief as may be just and proper.

### COUNT III
### Title VII
### <u>Sex Discrimination and Retaliation</u>

51.     Plaintiff incorporates by reference Paragraph 1 through 50 above.

52.     As described above, during the course of Miller's employment, the Defendant, by and through its agents and employees, discriminated against Miller in the terms, conditions, and privileges of employment in various way, in substantial part because of her sex, in violation of Title VII of the Civil Rights Act.

53.     Defendant failed to take reasonable and/or necessary steps to eliminate sex discrimination from the workplace and to prevent it from occurring in the future.

54.     Defendant also failed to adequately supervise, control, discipline, and/or otherwise penalize the conduct, acts, and failures of Cunningham, as described above.

55.     The above-described sex discrimination created an intimidating, oppressive, hostile, and offensive work environment which interfered with Miller's emotional and physical well-being.

56.     As a result of the hostile and offensive work environment perpetuated by Defendant, Miller suffered humiliation, emotional distress, and physical pain.

57.     Further, as alleged above, Defendant illegally retaliated against Plaintiff by subjecting her to unjust scrutiny, false allegations of misconduct, disparate treatment compared to co-workers, humiliation and abuse, and derisive comments based solely on her report of sex discrimination. Defendant had no legitimate reason for such acts. Each such act of retaliation violated Title VII.

58.     As a direct result of Defendant's violation of Title VII, Miller has lost wages and other economic benefits of her employment with Defendant. Further, Miller has suffered emotional distress, depression, inconvenience, and humiliation.

WHEREFORE, Plaintiff requests the following:

a.      That Defendant be required to compensate Plaintiff for the full value of wages and benefits she would have received had it not been for Defendant's illegal treatment of Plaintiff, with interest from the date of discrimination;

b.      That the Court award Plaintiff compensatory and punitive damages;

c.      That Plaintiff be awarded the costs and expenses of this litigation and reasonable attorney's fee; and

d.      That the Court grant Plaintiff additional relief as may be just and proper.

**COUNT IV**
**Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 2000(e) et seq.**
**Hostile Work Environment**

59.     Plaintiff incorporates by reference Paragraph 1 through 58 above.

60.     Miller was subjected to harassment and discrimination by Defendant's agents and employees, including her direct supervisor, because of her race and gender.

61.     Miller was subjected to disparate treatment, verbal abuse, intimidation, and racial slurs.

62.     Defendant's conduct was unwelcome, and Plaintiff perceived the conduct as hostile and/or abusive.

63.     The conduct was so severe or pervasive that reasonable persons in Plaintiff's position would have found their work environment to be hostile or abusive.

64.     Plaintiff reported the conduct to multiple levels of management, including to Quincy Stephenson, Shelli Lewis, and Aimee LeFevers. Moreover, the conduct was so pervasive and open that a reasonable employer would have been aware of it. These management level employees, therefore, were complicit in such abusive conduct.

65.     Moreover, after Miller engaged in the protected act of reporting the harassment and discrimination she was suffering, Defendant engaged in retaliatory acts, including intimidation and insult as described above.

66.     The retaliatory acts exacerbated the hostile work environment. The retaliatory and hostile conduct was so severe or pervasive that it forced Miller to involuntarily resign to protect herself. As a direct result, Miller has lost wages and other economic benefits of her employment with Defendant. Further, Miller has suffered emotional distress, depression, inconvenience, and humiliation.

WHEREFORE, Plaintiff requests the following:

    a.    That Defendant be required to compensate Plaintiff for the full value of wages and benefits she would have received had it not been for Defendant's illegal treatment of Plaintiff, with interest from the date of discrimination;

    b.    That the Court award Plaintiff compensatory and punitive damages;

    c.    That Plaintiff be awarded the costs and expenses of this litigation and reasonable attorney's fee; and

    d.    That the Court grant Plaintiff additional relief as may be just and proper.

**JURY TRIAL DEMANDED**

Date:  6/4/2019                 Respectfully submitted,

DOLFI LAW PC

 s/ Erin J. Dolfi
Erin J. Dolfi, Esquire
No. 86472
1100 Washington Avenue, Suite 206
Pittsburgh, PA 15106
(412)227-9724 (telephone)
(412)489-5768 (facsimile)
edolfi@dolfilawpc.com